UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

TINA WOLFE,

    Plaintiff,

v.                           CASE No. 8:12-CV-903-T-TGW

CAROLYN W. COLVIN,[1]
Acting Commissioner of Social Security,

    Defendant.

## ORDER

The plaintiff in this case seeks judicial review of the denial of her claim for Social Security disability benefits.[2] Because the decision of the Commissioner of Social Security is supported by substantial evidence and contains no reversible error, the decision will be affirmed.

I.

The plaintiff, who was thirty-nine years old at the time of the administrative hearing and who has a high school education and some

---

[1] On February 14, 2013, Carolyn W. Colvin became the Acting Commissioner of Social Security and should, therefore, be substituted for Commissioner Michael J. Astrue as defendant in this action. See 42 U.S.C. 405(g); Fed.R.Civ.P. 25(d).

[2] The parties have consented in this case to the exercise of jurisdiction by a United States Magistrate Judge (Doc. 15).

college, has worked as a receptionist, pharmacy technician, medical assistant, and cashier (Tr. 32-34, 42-43, 98). She filed a claim for Social Security disability benefits, alleging that she became disabled due to fibromyalgia, spinal stenosis, anxiety, depression, and obesity (Tr. 120). The claim was denied initially and upon reconsideration.

The plaintiff, at her request, then received a de novo hearing before an administrative law judge. The law judge found that, as of the date last insured, which was March 31, 2010, the plaintiff had severe impairments of fibromyalgia, lumbar spinal stenosis, obstructive sleep apnea, and morbid obesity (Tr. 12). He concluded that, with these impairments, the plaintiff had "the residual functional capacity to perform sedentary work as defined in 20 CFR 404.1567(a) except [she] required the option to alternate sitting and standing at will" (Tr. 14).

Based on the testimony of a vocational expert, the law judge found that, despite these limitations, the plaintiff could perform prior work as a receptionist (Tr. 16-17). Accordingly, the law judge ruled that the plaintiff was not disabled through the date last insured (Tr. 17). The Appeals Council

let the decision of the law judge stand as the final decision of the Commissioner.

II.

In order to be entitled to Social Security disability benefits, a claimant must be unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which ... has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. 423(d)(1)(A). A "physical or mental impairment," under the terms of the Social Security Act, is one "that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. 423(d)(3). In this case, furthermore, the plaintiff must show that she became disabled before her insured status expired on March 31, 2010. 42 U.S.C. 423(c)(1); Demandre v. Califano, 591 F.2d 1088, 1090 (5th Cir. 1979), cert. denied, 444 U.S. 952. The Act provides also that a claimant is not disabled if she is capable of performing her previous work. 42 U.S.C. 423(d)(2)(A).

A determination by the Commissioner that a claimant is not disabled must be upheld if it is supported by substantial evidence. 42 U.S.C. 405(g). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971), quoting Consolidated Edison Co. v. NLRB, 305 U.S. 197, 229 (1938). Under the substantial evidence test, "findings of fact made by administrative agencies ... may be reversed ... only when the record compels a reversal; the mere fact that the record may support a contrary conclusion is not enough to justify a reversal of the administrative findings." Adefemi v. Ashcroft, 386 F.3d 1022, 1027 (11th Cir. 2004)(en banc), cert. denied, 544 U.S. 1035 (2005).

It is, moreover, the function of the Commissioner, and not the courts, to resolve conflicts in the evidence and to assess the credibility of the witnesses. Grant v. Richardson, 445 F.2d 656 (5th Cir. 1971). Similarly, it is the responsibility of the Commissioner to draw inferences from the evidence, and those inferences are not to be overturned if they are supported by substantial evidence. Celebrezze v. O'Brient, 323 F.2d 989, 990 (5th Cir. 1963).

Therefore, in determining whether the Commissioner's decision is supported by substantial evidence, the court is not to reweigh the evidence, but is limited to determining whether the record as a whole contains sufficient evidence to permit a reasonable mind to conclude that the claimant is not disabled. However, the court, in its review, must satisfy itself that the proper legal standards were applied and legal requirements were met. Lamb v. Bowen, 847 F.2d 698, 701 (11th Cir. 1988).

### III.

The plaintiff challenges the law judge's decision on two grounds. Neither ground warrants reversal.

The plaintiff contends first that the law judge "erred by failing to evaluate plaintiff's complaints of fatigue, irritability and decreased concentration due to pain and side effects from her medications (as opposed to mental illness) under the Eleventh Circuit three part pain standard" (Doc. 22, p. 5). However, these three subjective complaints are covered by the law judge's credibility determination, which the plaintiff has not directly challenged.

The Eleventh Circuit has established a standard for evaluating complaints of pain and other subjective complaints. Dyer v. Barnhart, 395 F.3d 1206, 1210 (11th Cir. 2005). As the court of appeals explained in Landry v. Heckler, 782 F.2d 1551, 1553 (11th Cir. 1986), the pain standard "required evidence of an underlying medical condition and (1) objective medical evidence that confirms the severity of the alleged pain arising from that condition or (2) that the objectively determined medical condition is of such a severity that it can be reasonably expected to give rise to the alleged pain." If the law judge determines that, under this test, there is objectively determined medical evidence of an impairment which could reasonably be expected to produce disabling pain, the law judge "must evaluate the credibility of claimant's testimony as to pain, and must express a reasonable basis for rejecting such testimony." Hand v. Heckler, 761 F.2d 1545, 1549 n.6 (11th Cir. 1985).

The law judge properly applied the Eleventh Circuit's pain standard. The law judge recognized the need to articulate a credibility determination, and he referred to the pertinent regulations and Social Security rulings (Tr. 14). Moreover, citing Landry, he set out the appropriate standard

(id.). This demonstrates that the law judge employed the proper analysis. See Wilson v. Barnhart, 284 F.3d 1219, 1225-26 (11th Cir. 2002).

Significantly, the law judge did not wholly discount the plaintiff's complaints of pain. The law judge discussed the plaintiff's testimony in his decision (Tr. 15). He specifically noted the plaintiff's following allegations (id.):

> She stopped working because she could not sit too long. Her fibromyalgia symptoms were mainly in the shoulders. She spent most of her time lying in bed propped up on pillows. She also used a heating pad to help with back pain. She could walk 7-10 minutes, stand 10 minutes, sit about 10-15 minutes, and lift perhaps 10-15 pounds.

After considering the plaintiff's testimony, along with the objective medical evidence, the law judge restricted the plaintiff to sedentary work activity with the option to alternate sitting and standing at will (Tr. 14). Thus, the law judge accepted the plaintiff's subjective complaints to a great extent, and only rejected the allegation of total disability.

In his credibility determination, the law judge gave a cogent explanation for declining to credit fully the plaintiff's subjective complaints. Specifically, the law judge stated (Tr. 15):

After careful consideration of the evidence, the undersigned finds that the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements and her spouse's statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent they are inconsistent with the objective medical records and the above residual functional capacity assessment.

For example, the claimant testified that she stopped working because of back pain. However, the claimant told Dr. [Billie Jo] Hatton on February 11, 2009, that she stopped working because her boss fired her in order to hire his daughter. On this date, the claimant denied any significant anxiety (Exhibit 7F). Nonetheless, in a Third-Party questionnaire, the claimant's husband, Rodney Wolfe, stated that the claimant had anxiety attacks approximately four times a week (Exhibit 12E). Mr. Wolfe further stated that each anxiety attack[] lasted three hours (Exhibit 8E). In a Third-Party Function Report, Mr. Wolfe stated that the claimant took the children to school, picked them up, cooked dinner, and tried to clean the house (Exhibit 9E). However, the claimant testified that her husband and sister did the household chores. The Administrative Law Judge recognizes that childcare, by its very nature, requires a certain degree of lifting, carrying, standing, walking, pushing, pulling, bending, and stooping. Such activity is inconsistent with the functional limitations alleged by the claimant.

This explanation is more than adequate to discount the plaintiff's subjective complaints. See Heppell-Libsansky v. Commissioner of Social Security, 170 Fed. Appx. 693, 699 (11th Cir. 2006). Moreover, it is supported by substantial evidence.

Importantly, no doctor has opined that the plaintiff has greater functional limitations than found by the law judge. During the relevant period the plaintiff regularly saw her primary care physician, Dr. Paul Pulcini, and her pain management doctor, Dr. Michael D. Courtney, and neither opined any functional limitations.

Further, the plaintiff underwent a consultative examination by Dr. Kanika Whitehead and that doctor stated (Tr. 349-50):

> Based on my examination, it appears that the patient should be able to perform work related activities such as sitting, standing, walking, lifting, carrying and handling objects in an environment that is not too strenuous. The patient's ability to do work related mental activit[i]es also would appear to be within normal limits; however[,] I will leave that to be determined by the mental health specialist. The patient might benefit from employment where she is not required to stand or walk for prolonged periods of time and where she is not required to lift or carry heavy objects.

The law judge's residual functional capacity finding is fully consistent with Dr. Whitehead's assessment (see Tr. 14).

In addition, a nonexamining reviewing physician, Dr. Thomas Renny, concluded the plaintiff could perform light work (Tr. 453). However, the law judge gave the plaintiff the benefit of the doubt (Tr. 16) and limited her to sedentary work.

Consequently, there is no medical opinion that contradicts the law judge's finding of the plaintiff's residual functional capacity. Moreover, although the plaintiff alleged mental impairments of depression and anxiety, the law judge found that those impairments were not severe (Tr. 13), and the plaintiff expressly does not challenge that finding (Doc. 22, p. 7).

Under these circumstances, the plaintiff has little basis upon which to challenge the law judge's decision. As indicated, the plaintiff is reduced to complaining that the law judge failed to evaluate the plaintiff's subjective complaints of fatigue, irritability and decreased concentration. The law judge, however, expressly found that the plaintiff's "symptoms are not credible to the extent they are inconsistent with the objective medical records and the above residual functional capacity assessment" (Tr. 15). In other

words, the law judge found that the allegations of fatigue, irritability and decreased concentration are not credible to the extent they would allegedly preclude the plaintiff from performing sedentary work with a sit/stand option.

With respect to the complaint of fatigue, the law judge specifically noted that the plaintiff claims that "she gets tired" (Tr. 13). This claim of fatigue or tiredness, however, is reasonably accommodated by the plaintiff's restriction to sedentary work. There is no medical opinion stating that the plaintiff has greater functional limitations from fatigue or tiredness (or anything else). The only support the plaintiff cites for her allegation of fatigue are comments made in questionnaires that the plaintiff's medications make her tired (Doc. 22, p. 6). However, the law judge discounted the plaintiff's subjective complaints to the extent she claimed restrictions greater than a limitation to sedentary work, and the plaintiff has not challenged that credibility determination. Consequently, the plaintiff has not identified any evidence that would compel a finding that, due to fatigue, she was unable to perform sedentary work with a sit/stand option. See Adefemi v. Ashcroft, supra.

Similarly, there is no evidence which compels a finding that the plaintiff's complaint of irritability would prevent her from performing sedentary work as a receptionist. Again, the only evidence cited for complaints of irritability comes from the plaintiff (id.). The law judge, as explained, discounted the plaintiff's subjective complaints. Moreover, he found that the plaintiff had only a mild limitation in social functioning (Tr. 13). The plaintiff's perceived irritability may reflect some discord with her husband, which was reported by an examining psychologist (Tr. 311, 313). However, the plaintiff has indicated that she has no problem getting along with family, friends, neighbors or others (Tr. 147, 182). Further, her treating pain management physician has described the plaintiff as "very pleasant" (Tr. 504, 507). Another doctor has also reported the plaintiff as "pleasant" (Tr. 273). Accordingly, the law judge could reasonably conclude that the plaintiff's perceived irritability would not preclude her from working as a receptionist.

The plaintiff also contends that the law judge failed to evaluate her complaint of decreased concentration. In fact, the law judge found that the plaintiff has only a mild limitation in concentration, persistence or pace

(Tr. 13). The plaintiff has not challenged that finding. Rather, she attempts to skirt it by asserting that symptoms of difficulty with concentration can be caused not only by mental illness, but also by pain and side effects from medication (Doc. 22, p. 7). However, what is significant in determining disability is not the cause of a decrease in concentration (whether due to a mental disorder or due to pain and side effects of medication) but the degree of limitation in concentration.

The plaintiff has not pointed to any medical evidence contradicting the law judge's finding that the plaintiff has only a mild limitation in concentration, persistence or pace. No treating doctor has opined regarding a limitation in the plaintiff's concentration. An examining doctor determined that the plaintiff's "concentration was good" (Tr. 348). Also, two nonexamining reviewing psychologists opined, like the law judge, that the plaintiff had only mild limitations in concentration, persistence or pace (Tr. 342, 448). In addition, an examining psychologist opined that the plaintiff had a Global Assessment of Functioning (GAF) score of 70 (Tr. 313). The GAF scale "[c]onsider[s] psychological, social, and occupational functioning on a hypothetical continuum of mental health-illness."

Diagnostic and Statistical Manual of Mental Disorders, (DSM-IV-TR) (4th ed., Text Revision), p. 34. A rating of 70 is at the top of the range of only "[s]ome mild symptoms ... OR some difficulty in social, occupational, or school functioning ..., but generally functioning pretty well, has some meaningful interpersonal relationships," and is on the border of the range of "transient and expectable reactions to psychosocial stressors ...; no more than slight impairment in social, occupational or school functioning" (id.).

The only piece of medical evidence which even remotely favors the plaintiff's argument regarding concentration is a letter from an ARNP in the office of the plaintiff's primary care physician that states that the plaintiff "had been on medications for pain that may make her unable to concentrate in class" (Tr. 391). That letter carries no meaningful weight for a number of reasons. In the first place, a nurse practitioner under the regulations is not an acceptable medical source. 20 C.F.R. 404.1513(d)(1). Further, the statement was in the past tense and merely said that medications "may" affect her concentration. The statement, in addition, was conclusory and did not identify the problematic medications. Significantly, there is no record of the plaintiff complaining to a treating doctor about the side effects of medication,

which is particularly noteworthy with respect to the plaintiff's primary care physician because he had a format that includes a section for "Medicine Comments" (see, e.g., Tr. 466). Finally, the letter does not indicate the degree of limitation in concentration, so that there is no basis for thinking that, in the nurse practitioner's view, the plaintiff's possible limitation in concentration would be greater than the mild limitation found by the law judge.

For these reasons, the plaintiff's arguments based on her subjective complaints of fatigue, irritability and decreased concentration do not warrant a remand. Furthermore, at the hearing the plaintiff did not testify that she had functional limitations from those conditions. At the hearing, when asked whether she could return to work as a receptionist, she said she could not because her biggest problem would be walking from the office to the treatment rooms which would cause back pain (Tr. 44). She did not say that she could not work as a receptionist due to fatigue, irritability or decreased concentration.

The plaintiff's second argument is that the hypothetical question to the vocational expert was incomplete because it did not include functional limitations relating to deficits in concentration and social functioning (Doc.

-15-

22, p. 9). "In order for a vocational expert's testimony to constitute substantial evidence, the ALJ must pose a hypothetical question which comprises all of the claimant's impairments." Ingram v. Commissioner of Social Security Admin., 496 F.3d 1253, 1270 (11th Cir. 2007), quoting Wilson v. Barnhart, supra, 284 F.3d at 1227. However, the administrative law judge is not required to include restrictions in the hypothetical question that he properly finds are unsupported. Crawford v. Commissioner of Social Security, 363 F.3d 1155, 1161 (11th Cir. 2004).

As previously discussed, the law judge found that the plaintiff had only mild limitations in concentration and in social functioning. Those findings were reasonable and supported by substantial evidence. The plaintiff has not even attempted to demonstrate by citation to the medical evidence that the plaintiff has greater functional limitations. In light of these mild limitations, which indicate that the conditions do not significantly affect the plaintiff's ability to work, see 20 C.F.R. 404.1520a(d)(1), there were no limitations to be included in a hypothetical question to the vocational expert relating to concentration or social functioning. Consequently, the hypothetical question was not deficient.

Moreover, as the Commissioner correctly points out, where, as here, the law judge finds that the plaintiff can return to prior work, testimony from a vocational expert is not required. Lucas v. Sullivan, 918 F.2d 1567, 1573 n.2 (11th Cir. 1990).

It is, therefore, upon consideration

ORDERED:

That the decision of the Commissioner of Social Security is hereby **AFFIRMED.** The Clerk shall enter judgment in accordance with this Order and **CLOSE** this case.

DONE and ORDERED at Tampa, Florida, this 27th day of June, 2013.

                                      THOMAS G. WILSON
                                UNITED STATES MAGISTRATE JUDGE